## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 90-KA-00466-SCT

*JOSEPH WALTON*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 12/11/89

TRIAL JUDGE: HON. W.R. (WILLIAM) LAMB

COURT FROM WHICH APPEALED: MARSHALL COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: JOHN BOOTH FARESE

ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: WAYNE SNUGGS

ELLEN Y. DALE

DISTRICT ATTORNEY: NA

NATURE OF THE CASE: CRIMINAL - FELONY

DISPOSITION: AFFIRMED - 4/25/96

MOTION FOR REHEARING FILED: 5/28/96

MANDATE ISSUED: 8/15/96

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. Joseph Walton was convicted in the Marshall County Circuit Court of selling cocaine, and sentenced to twenty-five years in prison. Finding that Walton was not denied his statutory right to a speedy trial, we affirm.

### FACTS

¶2. On March 28, 1988, Lieutenant Randy Corban, Sergeant Eddie McCullough, and Sergeant Donna Conner, all of the Mississippi Bureau of Narcotics, and Charles Moore, a confidential informant, went to a residence at 355 North Walthall Street in Holly Springs, Marshall County, Mississippi. The purpose was to perform a "controlled buy," in which Charles Moore would purchase cocaine from Joseph Walton, an acquaintance of Moore's, who was suspected by the Bureau of dealing drugs.

¶3. Moore and Conner drove to 355 North Walthall Street, while Corban and McCullough took up a

surveillance post in a van parked just north of the residence on North Walthall Street. Shortly after Conner and Moore pulled into the driveway of the residence, Walton drove up with a male passenger later identified as "Maurice." Walton met briefly with Moore outside the house, and then he, Moore, and Conner entered the house.

¶4. Walton asked Moore how much Conner wanted. Conner told Moore she wanted one gram; upon being informed that the price would be one hundred dollars, she handed this amount in cash to Moore. Walton and Moore then went into another room and closed the door. A few minutes later, Walton called to "Maurice," at that time sitting in the living room with Conner, to go outside and "get the scale." Maurice left the house, returned, and went into the room where Walton and Moore were. Maurice came back out and sat down again in the living room. A few minutes later, Moore and Walton emerged from the room. As Walton andConner were about to leave the house, Conner saw Walton hand Moore an object, later identified as a Brillo pad, which Walton told Moore was to be used to strain cocaine. When Moore and Conner got back into the car, Moore handed Conner a packet and the Brillo pad. Moore and Conner then drove away, met up with McCullough, and the two agents took a sworn statement from Moore. The substance in the packet was identified by the North Mississippi Crime Lab as cocaine.

¶5. Walton was indicted October 14, 1988, for sale of cocaine, a Schedule II controlled substance, in violation of Miss. Code Ann. (1972) § 41-29-115 (A)(a)(4), to "Charles Williams and Donna Conner," and with receiving from them one hundred dollars for the controlled substance, in violation of Miss. Code Ann. (1972) § 41-29-139(a)(1). On November 10, 1988, Walton waived arraignment and entered a plea of not guilty. The case was set for trial on February 22, 1989, as a fifth backup setting, in the Marshall County Circuit Court. Subpoenas for witnesses were requested by the State, including one for "Charles Moore, Holly Springs." The case was not tried that term.

¶6. On March 14th, Walton's case was set for trial on May 16, 1989, as a fourth backup setting. Again, subpoenas were requested by the State and granted. The case was not tried that term, and on June 19, 1989, it was, along with twenty other cases, set for trial on August 28, 1989. The order stated that "(e)ach case will be continued from day to day and will be subject to trial on any date during the next term of Court in Marshall County, Holly Springs."

¶7. The State's third request for subpoenas included one for "Charles Williams, c/o Mississippi Bureau Narcotics - Oxford." Walton's case was not tried that term, and on October 25th, it was set for trial, along with eight others, on November 7, 1989, in the order listed.[1] The order stated that "Each case will be continued from day to day and will be subject to trial on any date during the term of Court in Marshall County." On November 9, the State requested a subpoena for "Charles Vern Moore," at an address in Nashville. The subpoena was issued on November 15, for "Charles V. Moore, Holly Springs." The case was continued from day to day from November 7th, and by agreement set for jury trial on November 14th. On November 14th, the State requested that the case be continued until the next day, because one of its witnesses (Moore) had informed them the night before that he would not appear that day (the 14th).

¶8. At this point, Walton's lawyer stated that Walton was ready for trial, and moved for dismissal for failure to prosecute within 270 days. He admitted that no speedy trial motion appeared in the record. He also asked the Court to take notice that the informant was named as Charles Williams in the indictment, and that the defense had learned on discovery that it was Charles Moore. Citing a violation of the constitutional right to confront witnesses, Walton's lawyer asked the Court to dismiss the case. The State asked the Court to

take judicial notice that other cases were tried during the previous terms, including a capital murder case. The Court, reviewing the record, determined that the State had been ready for trial at each term, while the defendant had not submitted jury instructions until August 25, 1989. The Court denied Walton's motion to dismiss based on the 270-day rule, finding that good cause had been shown for not trying him within that period. The Court granted the State's motion to continue the case until the next day.

¶9. Trial was held on November 15-16, 1989. The jury returned a verdict of guilty, and Walton was sentenced on December 11, 1989, to twenty-five years in prison. Walton complains of the following error:

**I. THE TRIAL COURT ERRED IN NOT DISMISSING THE STATE'S CAUSE AGAINST THE APPELLANT FOR FAILURE TO PROSECUTE THE APPELLANT WITHIN TWO HUNDRED SEVENTY DAYS OF ARRAIGNMENT.**

## I. <u>SPEEDY TRIAL</u>

¶10. Walton contends on appeal that he was denied his right to a speedy trial under the Sixth Amendment of the United States Constitution, and under Miss. Code Ann. (1972) § 99-17-1. A chronology of Walton's case follows:

Oct. 14, 1988 Indictment by Marshall County Grand Jury

Nov. 10, 1988 Waiver of Arraignment; Entry of Not Guilty Plea

Jan. 31, 1989 Order of Setting for Feb. 22, 1989

Mar. 14, 1989 Order of Setting for May 16, 1989

June 19, 1989 Order of Setting, along with 20 other cases, for August 28, 1989.

Oct. 27, 1989 Order of Setting, along with at least 9 other cases, for November 7, 1989.

Nov. 14, 1989 Court grants State one-day continuance due to non-availability of witness Charles Moore; denies Walton's motion to dismiss for violation of 270 day rule.

Nov. 15 - 16, 1989 Trial

Nov. 16, 1989 Jury Verdict: Guilty; presentence investigation ordered;

Dec. 11, 1989 Sentenced to 25 years;

Dec. 13, 1989 Walton files JNOV/New Trial motion, including 270 day grounds

Mar. 2, 1990 Hearing: Motion for substitution of counsel by Walton granted; Walton asks Court to take judicial notice of docket record and to examine it for open dates during 4 prior terms

Apr. 19, 1990 Court denies Walton's Motion for New Trial

Apr. 25, 1990 State petitions for revocation of suspended armed robbery sentence

Apr. 26, 1990 Walton files Notice of Appeal of cocaine conviction

Nov. 5, 1990 Hearing; Order imposing suspended sentence; Walton sentenced to serve 15 years with credit given for five years served; sentence to run concurrently with cocaine conviction

Nov. 14, 1990 Walton committed

Nov. 20, 1990 Walton files appeal of Order revoking sentence

## 270 DAY RULE

## GOOD CAUSE

¶11. Miss. Code Ann. (1972) § 99-17-1 provides:

> Unless good cause be shown, and a continuance duly granted by the Court, all offenses for which indictments are presented to the Court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

¶12. Walton was tried 370 days after arraignment. Where the accused is not tried within 270 days of arraignment, the State bears the burden of establishing good cause for the delay. *Polk v. State,* 612 So.2d 381, 387 (Miss. 1992); *Vickery v. State*, 535 So.2d 1371, 1375 (Miss. 1988); *Williamson v. State,* 512 So.2d 868, 877 (Miss. 1987)[2]; *Nations v. State*, 481 So.2d 760, 761 (Miss. 1985).

¶13. The State argues that delays in bringing Walton to trial were for good cause because the Marshall County docket was extremely congested. In particular, the State asks us to "(a)ssume . . . that each of the orders setting trial were 'continuances' for good cause" and to "trea(t) each order as a continuance." Under such calculations, 166 days would be subtracted from the 370-day total, shrinking the pre-trial delay to a permissible 204 days.

¶14. Docket congestion has been held to constitute good cause for delay. *Polk*, 612 So.2d at 387; *Adams v. State*, 583 So.2d 165, 167 (Miss. 1991); *Yarber v. State*, 573 So.2d 727, 729 (Miss. 1991); *Williamson*, 512 So.2d at 877. However, this Court has clearly stated that a crowded docket will not <u>automatically</u> suffice to establish good cause. *McGee v. State*, 608 So.2d 1129, 1132 (Miss. 1992); *Williamson*, 512 So.2d 868.[3] In *McGee,* where the trial court held that "it was not physically and humanly possible for the case to be brought forward and tried within the two hundred and seventy days," we directed that on remand the trial court was to determine whether the specific facts of the case had given rise to good cause for delay. The State would bear the burden of positively demonstrating that the backlog had actually caused the delay in this particular case.

¶15. During 1994, this Court decided the case of *Harrison v. State*, 648 So. 2d 66 (Miss. 1994). While it is true that the cases involving docket congestion were decided prior to *Harrison*, the *Harrison* decision did not overrule and delete the prior decisions of this Court surrounding the 270 day rule, particularly as it pertains to docket congestion being good cause for delay under the statute. Rather, the pre-*Harrison* decisions and rationale remain applicable even though *Harrison* does now allow a defendant's case to be dismissed without prejudice subject to reindictment. Accordingly, upon the proper showing by the State in response to a defendant's timely motion for dismissal because of an alleged 270 day violation, docket congestion can be a proper basis for good cause when supported by the facts of the particular case. Thus, *Harrison* did not overrule docket congestion as a potentially proper basis for the State to show good cause.

¶16. In reviewing Walton's case, the trial judge found good cause for the delay and denied Walton's motion for a new trial:

> The Court deems it unnecessary to consider any evidence except the fact that this case was set for trial on August 28, 1989, during the Regular August 1989 Term of this court. The case could not be tried due to the fact that a capital murder case was tried during the August term . . . (t)he Court is of the opinion that these situations constitute just cause as contemplated by the statute. The Court further finds that although a specific order of continuance from term to term has not been entered in this case, that the Minutes of the court reflect that 'all matters not disposed of during the term are continued to the next term of court.'

¶17. A finding of good cause is a finding of ultimate fact, and should be treated on appeal as any other finding of fact; it will be left undisturbed where there is in the record substantial credible evidence from which it could have been made. *McNeal v. State,* 617 So. 2d 999, 1007 (Miss. 1993); *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991). Likewise, although not applicable in the case *sub judice*, this Court will not affirm a trial court's finding of fact if the trial judge applied an erroneous standard. *Leatherwood v. State*, 539 So. 2d 1378, 1387 (Miss. 1989).

¶18. Walton was tried 370 days after arraignment. The State argues that delays were attributable to the extremely congested Marshall County criminal trial docket. The record shows that the Marshall County Circuit Court docket was indeed crowded during the period between Walton's arraignment and trial. There were twenty (20) other cases set for trial along with Walton on August 28, l989. Walton's fourth trial setting included eight (8) other cases which were all subject to trial according to the trial judge.

¶19. The trial judge in Walton's case found good cause for the delay due to the congested docket in Marshall County and thus denied Walton's motion for a new trial. The State had produced a report showing a heavy trial caseload in response to Walton's 270 day issue raised in his Motion for New Trial. As previously stated, a finding of good cause is a finding of ultimate fact, and is no different than any other finding of fact on appeal; it should be left undisturbed where there is in the record substantial credible evidence from which it was made. *McNeal,* 6l7 So. 2d at l007; *Folk*, 576 So. 2d at l247.

¶20. This Court upholds the finding of the trial judge. The trial judge was only called upon to rule on the 270 day speedy trial issue the day prior to the actual trial. However, post-delay determinations of cause are permissible. *McGee,* 608 So. 2d at 1133; *Barnes v. State,* 577 So. 2d 840, 844 (Miss. l991). *See also*, *Williamson*, 5l2 So. 2d at 877. In *Williamson,* the Court accepted the State's after-the-fact explanation that delay resulted from congested dockets.

¶21. There were no continuances per se in this case, only the trial court's orders setting the date of Walton's trial. However, a one day continuance was granted to the State on November l4, l989, due to the unavailability of Charles Moore, an essential State witness. Accordingly, the "good cause" of § 99-l7-l is satisfied by the trial judge's after-the-fact specific finding of "good cause" based on the State's report of its heavy trial caseload.

¶22. Walton never raised the speedy trial issue within the time frame prescribed by the statute. Walton never filed a demand for speedy trial until November l4, l989, the day his case was set for trial. A one-day continuance was given the State to secure the attendance and testimony of Charles Moore, a material State's witness. Trial was conducted the very next day, November l5, l989. The very first time the State

was called upon to make a showing of "good cause" was in their response to the Motion for New Trial. The State promptly filed a report of the enormous criminal caseload handled during the applicable terms of the Marshall County Circuit Court, and as previously noted, the trial judge accepted the congested trial docket as "good cause" shown. Should Walton, out on bond this entire period of time, sitting idly by without filing a speedy trial demand until the day of trial, be allowed to "sandbag" the trial court? We do not believe this is what the legislature contemplated under § 99-l7-l, nor what this Court intended either.[4]

¶23. This Court in *State v. Davis*, 382 So. 2d l095, l098 (Miss. 1980) stated:

> In 57 A.L.R. 2d 303, 306, Waiver or Loss of Accused Right to Speedy Trial (l958), appears the following:

> A majority of the cases hold that by failing to demand a trial, or by failing to make some effort to procure a speedier trial than that actually accorded to him by the state, accused waives his right to trial within the period prescribed by the statute, this being particularly true when accused is on bail. And it has been expressly pointed out that a failure to demand trial within the period prescribed by the statute will defeat a motion for discharge even though the statute does not expressly make such demand a requirement. And in the absence of an affirmative request or demand for trial it will be presumed that defendant acquiesced in the delay.

¶24. On the day of trial in *Davis,* the defendants filed for the first time a motion to dismiss the charges because of the State's failure to bring them to trial within 270 days after their arraignment. The trial judge sustained the motions and discharged the defendants and the State appealed to this Court. This Court stated:

> In the present case clear justification for l4l days of the delay following arraignment appears from a consideration of the record. At no time on any of the occasions when the trial court entered orders for continuances were there any requests by the defendants for trial or assertion of their right to a speedy trial or objection or protest at the delay. Moreover, no prejudice is shown to have resulted to the defendants from the delays.

*Davis*, 382 So. 2d at 1098.

¶25. In this case, the trial court entered orders specifically setting dates for trial, not the general continuances criticized in *Vickery v. State,* 535 So. 2d l37l (Miss. l988). Also, when faced with the issue at the Motion for New Trial hearing, the trial judge found "good cause" for the delay in bringing Walton to trial based on the congested docket. Walton, out on bond the entire time, apparently was satisfied that the extremely heavy criminal docket in Marshall County (sometimes twenty (20), other times eight (8) cases deep on the day of trial setting) was delaying his case, because he never demanded a speedy trial until the day of trial, 370 days after waiver of arraignment. Except for nineteen (l9) days unaccounted for by any order or continuance, the showing of "good cause" here, as found by the trial judge is much more valid and concrete than in *Vickery*, where over one thousand (l000) days elapsed and eight (8) general continuances from term to term contained a recital of "good cause" by the trial judge. Finally, Walton has not shown any problems with his defense which were caused by the delay and, as in *Davis,* Walton has endured no prejudice.

¶26. The reasoning of Justice Lee's dissent in *Turner v. State*, 383 So. 2d 489 (Miss. 1980), is most

persuasive regarding whether a case is dismissible when tried past the allotted 270 days. As stated by Justice Lee in *Turner*, "I think that the provisions of the Federal and State Constitutions and of Section 99-17-1 only require that an accused be discharged in denying him a speedy trial which results in prejudice and in denial of a fair trial to him." *Id.* at 492. Accordingly, in the absence of a showing of prejudice to Walton's right to a fair trial by a delay beyond the 270 days, Walton's case should not be dismissed with prejudice.

¶27. There is substantial evidence of the congested trial docket in Marshall County which would support the trial court's "good cause" finding. Walton waived his right to complain about not being tried within 270 days, because he neither requested nor asserted his right to a speedy trial or objected to a delay and prejudice has not been shown by Walton. Accordingly, his sentence is affirmed, having no basis for reversal[(5)].

## CONCLUSION

¶28. Although Walton was tried 370 days after his arraignment, the State has shown good cause for such delay which is not in violation of his right to a speedy trial under Miss. Code Ann. § 99-17-1 (1972). Accordingly, Walton's conviction and sentence for selling cocaine are affirmed as there was good cause shown for the delay.

¶29. **CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF TWENTY FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**LEE, C.J., PITTMAN, SMITH AND MILLS, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND McRAE, JJ. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, P.J.**

### SULLIVAN, PRESIDING JUSTICE, DISSENTING:

¶30. Common sense dictates that this Court follow Miss. Code Ann. § 99-17-1 (1994) as written by the legislature. Such a course of action would put an end to this Court's self-inflicted 270 day speedy trial debate. An interpretation of the 270 day statute which is dependent upon the seriousness of the underlying charge is dead wrong. The statute is applicable to "all offenses for which indictments are presented to the court."

¶31. The 270 day rule does not require the defendant to prove that his right to a fair trial was prejudiced before he is entitled to a dismissal. Further, there is no time frame prescribed by the statute within which the defendant must make a demand for a speedy trial. There is, in fact, no mention at all that the defendant must demand a speedy trial before the 270 day rule becomes operative. Finally, the statute requires "good cause be shown, and a continuance duly granted by the court" before we may discount any of the delay. The judiciary is bound by the clear and unambiguous mandate of this statute. *Payne v. State*, 363 So. 2d 278, 279 (Miss. 1978).

¶32. Good cause does not necessarily have to be shown contemporaneously with each continuance, but the lower court's finding of good cause in the case at hand was erroneous. In its review of the reasons for delay, the trial court stated that it was "unnecessary to consider any evidence except for the fact that this case was

set for trial on August 28, 1989." We are not bound to accept the trial court's finding of good cause as the statute allows no such discretion in its review of an alleged speedy trial violation. *See Leatherwood v. State*, 539 So. 2d 1378, 1387 (1989) ("Factfindings made under an erroneous legal standard are not protected by our substantial evidence clearly erroneous standard of review.").

¶33. An even closer review of the record reveals that 290 days had already passed before the arrival and subsequent continuance of the August 28, 1989 trial date. Even if the lower court had employed the appropriate standard of review, the State failed to clearly demonstrate that a backlog of cases had actually caused any of the delay extending the period of time between arraignment and trial beyond 270 days in this particular case. *McGee v. State*, 608 So. 2d 1129, 1133 (Miss. 1992).

¶34. It is questionable whether the court's repeated orders setting new trial dates may be considered as the type of continuances contemplated by the 270 day rule. Some of these orders setting new trial dates in the case at hand may have been the equivalent of a continuance had they been supported by a showing of good cause. However, the blind acceptance of mass continuances certainly ignores the purpose of the 270 day rule. *Yarber v. State*, 573 So. 2d 727, 729 (Miss. 1990); *Vickery v. State*, 535 So. 2d 1371, 1375-76 (Miss. 1988). In light of the record presented to this Court, the majority's review of the decision below amounts to nothing more. The defendant should be discharged and the case against him dismissed as a result of the statutory speedy trial violation.

**BANKS AND McRAE, JJ., JOIN THIS OPINION.**

**BANKS, JUSTICE, DISSENTING:**

¶35. Because I believe that the Court avoids our recently adopted procedure for handling violations of the 270-day statute, I dissent.

¶36. In *State v. Harrison*, 648 So. 2d 66 (Miss. 1994), we adopted a procedure for addressing violations of the 270-day statute which in my view takes into account the literal wording of the statute and its salutary purposes. *See also Winder*, 640 So. 2d 893 (Miss. 1994) (Banks, J., dissenting). We abandoned the position that a violation required dismissal with prejudice in all cases in favor of a dismissal without prejudice, provided that the defendant had not suffered actual prejudice to trial rights because of the delay or that the delay was not attributable to the deliberate bad faith conduct of the State. *Id.* at 66. An impetus for that change of position was the realization that ever increasing excuses for complying with the act were being accepted in order to avoid the result that a perpetrator of a serious crime might escape punishment based solely upon the inadvertent neglect of prosecutorial authorities to either afford a trial or document good reason for the failure to do so in the manner prescribed by statute. The *Harrison* formula, then, was not one to be superimposed upon the act as eroded by decisions which avoided its literal import. Rather, it was intended to aid in the enforcement of the act by providing a remedy for its violation more palatable to comfortable imposition.

¶37. It follows, in my view, that we should enforce the statute according to its terms. Those terms require both "good cause shown" and "a continuance granted." Under the *Harrison* rationale, a crowded docket is no longer acceptable as good cause. Moreover, in the instant case, there is no continuance granted. Accordingly, the indictment should have been dismissed. Because no prejudice or willfulness was shown, the dismissal would be without prejudice to reindictment.

¶38. The majority also asserts that the 270-day statute was waived by Walton because he failed to object to any delays. While the failure to assert the right to speedy trial has been considered as a factor in the analysis whether the constitutional right has been violated, we have never considered such a failure an absolute bar. *Perry v. State*, 637 So. 2d 871 (Miss. 1994). We have also held as well that such failure does not bar application of the 270-day statute. *Nations v. State*, 481 So. 2d 760, 761 (Miss. 1985) (stating that "[i]t is axiomatic that a defendant has no duty to bring himself to trial"). Today's majority continues the trend of discarding mechanisms of enforcement and inventing mechanisms of avoiding application of the statute to the point that the statute becomes meaningless. *Harrison* was intended to halt that trend. Today's decision renders *Harrison* stillborn and any legislative policy enunciated by the statute a nullity. Accordingly, I dissent.

**PRATHER, P.J., JOINS THIS OPINION.**

1. The first page of the order is missing, and Walton's case is second on the list of page two.

2. As recently recognized in *Jasso v. State*, 655 So. 2d 30, 35 (Miss. 1995), yet unrelated to the proposition it is used for today, *Williamson* has been implicitly overruled in *Hansen v. State*, 592 So. 2d 114, 134 (Miss. 1991), cert. denied, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570 (1992) on grounds underlined unrelated to its docket congestion holding.

3. In *Williamson v. State,* 512 So. 2d 868 (Miss. 1987), this Court held docket congestion to be good cause for a 278-day delay in bringing an accused to trial in the Yalobusha County Circuit Court, noting that the court met only in July and January, that the July term was previously filled, and that the judge scheduled Williamson's trial for the first available date at the next term. We explicitly limited our ruling to the particular facts of that case. *Id.* at 877.

4. Post-delay determinations of cause are permissible. *McGee*, 608 So. 2d at 1133, *Barnes,* 577 So. 2d at 844. *See also Williamson,* 512 So. 2d at 877 (Court accepted State's after-the-fact explanation that delay resulted from congested dockets).

5. Walton's other assignments of error have no merit warranting a discussion by this Court.